**2022 UT 18**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellant*,

*v.*

ISIDOR PACOMIO ARCHIBEQUE,
*Appellee*.

No. 20210008
Heard March 14, 2022
Filed April 28, 2022

On Appeal of Interlocutory Order

Third District, Salt Lake
The Honorable Richard McKelvie
No. 201903186

Attorneys:

Sean D. Reyes, Att'y Gen., Christopher D. Ballard, Asst. Solic. Gen.,
Colleen K. Magee, Salt Lake City, for appellant

Ann M. Taliaferro, Jeremy Delicino, Cara M. Tangaro, Salt Lake City,
for appellee

CHIEF JUSTICE DURRANT authored the opinion of the Court, in
which JUSTICE PEARCE, JUSTICE PETERSEN, JUDGE HAGEN, and
JUDGE MORTENSEN joined.

Having recused himself, ASSOCIATE CHIEF JUSTICE LEE does not
participate herein; COURT OF APPEALS JUDGE DIANA HAGEN sat.

Due to his retirement, JUSTICE HIMONAS did not participate herein;
COURT OF APPEALS JUDGE DAVID N. MORTENSEN sat.

CHIEF JUSTICE DURRANT, opinion of the Court:

## Introduction

¶1 Isidor Pacomio Archibeque faces seven felony charges for an alleged pattern of sexual abuse that occurred between 2014 and 2017. He denies the charges and served his alleged victim, A.W., with a subpoena to appear and testify at his preliminary hearing in the district court. A.W. filed a motion to quash the subpoena.

¶2 To defeat an alleged victim's motion to quash at the preliminary hearing stage, our caselaw requires that a defendant demonstrate to the magistrate that the testimony is necessary to present specific evidence that is reasonably likely to defeat the State's showing of probable cause. The question this interlocutory appeal presents is whether the district court may judge the sufficiency of the defendant's showing based solely on an in camera proffer, without first affording the State an opportunity to respond. We hold that the court may not do so.

## Background

¶3 Mr. Archibeque is charged with two counts each of rape, forcible sodomy, and forcible sexual abuse, and one count of object rape, in connection with a series of alleged acts directed at A.W. over the course of several years. A.W. was a minor throughout the duration of the alleged abuse, and Mr. Archibeque was her pastor.

¶4 Mr. Archibeque denies the charges against him and requested a preliminary hearing at the district court. He informed the court that he would seek A.W.'s live testimony in addition to her written statement and then served her with a subpoena to appear and testify at the hearing. A.W. moved to quash the subpoena, arguing that requiring compliance would be unreasonable and that forcing her to testify would violate her constitutional rights.

¶5 While A.W.'s motion to quash was pending, we issued *State v. Lopez*, which clarified the respective rights of defendants and alleged victims at preliminary hearings.[1] We held that, in light of the "circumscribed function of the preliminary hearing," "a subpoena compelling the [alleged] victim to give additional, live testimony will survive a motion to quash only if the defendant demonstrates that the subpoena is necessary to present specific evidence that is reasonably likely to defeat the [State's] showing of probable cause."[2]

---

[1] 2020 UT 61, 474 P.3d 949.

[2] *Id.* ¶ 4 (footnote omitted).

¶6 After *Lopez* was issued, Mr. Archibeque asked to make the showing necessary to overcome A.W.'s motion to quash in camera and only to the district court. Both the State and A.W. filed memoranda in opposition to Mr. Archibeque's request. The State argued that by viewing the evidence in camera, the district court judge would violate the Code of Judicial Conduct's prohibition on ex parte communications.[3] And A.W. argued that Mr. Archibeque's constitutional rights as a criminal defendant did not entitle him to an in camera proceeding.

¶7 The district court granted Mr. Archibeque's motion in part, attempting to reach a compromise that would respect the rights of all involved. The court found that requiring Mr. Archibeque "to expose his theory of the case" and "to reveal evidence concerning impeachment of the alleged victim" during the preliminary hearing would be prejudicial and violate his constitutional rights. It therefore determined that Mr. Archibeque would be allowed "to make an in camera proffer as to what evidence is anticipated to be gleaned from the cross-examination" of A.W. Then, if the court were to determine that the proffered evidence "could obviate probable cause," it would turn that evidence over to the State to give it "notice as to how the defense intends to approach [A.W.] at the preliminary hearing." But if the court were to determine that the proffered information would not obviate probable cause, then that information would "remain sealed and [would] not be disclosed to the State."

¶8 The parties view the practical effect of the district court's order differently. The State is concerned that under the terms of the order, it will not "have the opportunity to correct and contextualize" Mr. Archibeque's representations or to show that "the ground[] to be covered by the live witness could just as effectively be presented by other means."[4] But Mr. Archibeque does not read the order as limiting the State's "opportunity to address [his] in camera representations" (if the court finds they obviate probable cause) or "to show that live testimony is unnecessary."

¶9 Our reading of the district court's order comports with the State's, and we review it accordingly. Under the order, if the court determines that Mr. Archibeque's proffer "could obviate probable cause," it will turn the information over to the State "so they will have notice as to how the defense intends to approach [the] witness

---

[3] *See* UTAH CODE JUD. CONDUCT R. 2.9.

[4] *See Lopez*, 2020 UT 61, ¶ 54 n.18.

at the preliminary hearing." This language suggests that by the time the State receives the information, the court will have already decided that A.W. will have to testify. Giving the State "notice" of how Mr. Archibeque "intends to approach [the] witness" merely provides the State the opportunity to prepare for the testimony, not to refute the proffer or argue that the ground to be covered could be presented without the testimony.[5] Given our reading of the order, we offer no opinion on whether a district court could properly allow for an in camera *Lopez* proffer so long as the State and alleged victim were given an opportunity to challenge the proffer before the court required the alleged victim to testify.

¶10 After the district court issued its order, the case proceeded to the preliminary hearing. There, to show probable cause existed to justify the charges against Mr. Archibeque, the State submitted a statement from A.W. under rule 1102 of the Utah Rules of Evidence.[6] Based on this statement, the court made a "preliminary determination" that the State had established a prima facie case for probable cause as to each of the charges. But it stayed the anticipated

---

[5] The district court's explanation of its proposal to the parties at a hearing on Mr. Archibeque's motion supports this reading of the order. The court suggested that if it makes the determination that Mr. Archibeque's proffer is "one of the rare instances" in which the alleged victim's testimony would obviate probable cause, "at that point, then the State is given the information in advance of the preliminary hearing so they have an opportunity to adequately prepare for it and give the witness an opportunity to adequately prepare for it so that she's not completely blindsided." According to this language, the district court's determination as to the sufficiency of the proffer is made before the information is turned over. And the language regarding notice to the State presumes A.W. will testify and leaves no room for the court to reverse that determination.

At oral argument, counsel for Mr. Archibeque maintained that, even under our reading of the order, the State and A.W. are not foreclosed from filing a subsequent motion to quash once the proffer, if sufficient, has been disclosed. But we need not wait to see if the district court would grant a subsequent motion to quash in order for us to decide whether the court may base its decision on the present motion to quash solely on an in camera proffer.

[6] Rule 1102 allows the admission of "[r]eliable hearsay" at preliminary hearings. UTAH R. EVID. 1102(a).

in camera review of Mr. Archibeque's *Lopez* proffer pending our resolution of this interlocutory appeal. We have jurisdiction under Utah Code section 78A-3-102(3)(h).

**Standard of Review**

¶11 In cases where in camera review is typical, such as when a claim of privilege is asserted in response to a discovery request, "the determination of whether in camera review is necessary lies in the sound discretion of the district court."[7] But this is not a case where a party seeks discovery of purportedly privileged information. Here, the district court partially granted Mr. Archibeque's motion for in camera review to protect his constitutional rights as a criminal defendant. And because constitutional issues are questions of law, we review the district court's order for correctness.[8]

**Analysis**

¶12 The State raises two primary arguments on appeal. First, it argues that allowing Mr. Archibeque to proceed with his *Lopez* proffer in camera would violate the Code of Judicial Conduct's prohibition of ex parte communications.[9] Second, it argues that the district court's order violates A.W.'s constitutional rights, as a crime victim, to "be treated with fairness, respect, and dignity, and to be free from harassment and abuse throughout the criminal justice process."[10]

¶13 With respect to the State's first argument, we note the parties' differing interpretations of the procedure set forth in the district court's order. The State calls it an "ex parte proceeding," while Mr. Archibeque calls it an "in camera review." The procedure may be "ex parte" in the sense that the *Lopez* proffer would be "made at the instance and for the benefit of one party only,"[11] but we need not decide whether it is the sort of "ex parte communication"

---

[7] *Allred v. Saunders*, 2014 UT 43, ¶ 24, 342 P.3d 204.

[8] *Neese v. Utah Bd. of Pardons & Parole*, 2017 UT 89, ¶ 21, 416 P.3d 663.

[9] *See* UTAH CODE JUD. CONDUCT rule 2.9(A).

[10] *See* UTAH CONST. art. I, § 28(1)(a).

[11] *See Ex parte*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "ex parte" as: "Done or made at the instance and for the benefit of one party only, and without notice to, or argument by, anyone having an adverse interest").

contemplated by the Code of Judicial Conduct. So to avoid confusion, and because the district court's order is itself styled as granting in part a "motion for in camera review," that is how we refer to the procedure throughout this opinion—even though we disagree, for reasons we explain, with Mr. Archibeque's view that there is no "principled distinction" between the sort of in camera review courts routinely employ and the one at issue here.

¶14 Although we decline to consider whether the district court's order violates the Code of Judicial Conduct, we agree with the State that "a defendant cannot seek to force his [alleged] victim to testify at his preliminary hearing without telling the prosecution and the victim why, and giving them an opportunity to respond." And although we applaud the district court's efforts to craft a compromise that seeks to respect the constitutional rights of all interested parties, we are not convinced Mr. Archibeque's statutory or constitutional rights at this stage of the proceedings entitle him to an in camera proffer. And because one-sided proceedings are disfavored, we reverse the district court's order.[12]

## I. The Adversarial Legal System Disfavors One-Sided Proceedings

¶15 Under our adversarial system of justice, courts decide the matters before them "on the basis of facts and arguments . . . adduced by the parties,"[13] relying on the parties "to zealously advocate their cause."[14] One-sided proceedings are disfavored under this system because they "deprive the absent party of the right to respond and be heard."[15] Information given to the court in such a proceeding "may be incomplete or inaccurate" and "carries the attendant risk of an erroneous ruling on the law or facts."[16] It is therefore "inherently unfair to allow one party to put evidence

---

[12] Because we reverse on this basis, we need not and do not address the State's arguments regarding A.W.'s constitutional rights as an alleged victim.

[13] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 357 (2006) (citation omitted).

[14] *State v. King*, 2006 UT 3, ¶ 14, 131 P.3d 202.

[15] *State v. Scales*, 933 P.2d 737, 741 (Kan. 1997) (citation omitted).

[16] *Id.* (citation omitted).

before the court without allowing his opponent the opportunity to test its validity."[17]

¶16 Mr. Archibeque asserts that the district court's order is a legitimate use of in camera review. He notes that courts "have long been empowered to review materials in camera to protect privileges and dissemination of sensitive information." This is true but not relevant to this case. In camera review is occasionally necessary where one party seeks access to another party's purportedly privileged material—in other words, where discovery is sought. But here, no party has sought discovery of the information Mr. Archibeque claims is privileged. Instead, he wishes to withhold from the State and A.W. the justification for his own subpoena. So the cases he cites are inapposite.

¶17 As one example, Mr. Archibeque cites *State v. Otterson*, where the court of appeals explained that a party seeking records covered by the patient-therapist privilege[18] "must petition for an in camera review in which the [district] court will review the records to determine if they actually contain material that is relevant and ought to be disclosed."[19] There, unlike here, the issue was whether the material was discoverable: the defendant sought access to his daughter's privileged counseling records.[20] Moreover, *Otterson* explained that the district court could conduct an in camera review only after the defendant showed, with reasonable certainty, "that exculpatory evidence exist[ed] which would be favorable to [the] defense."[21] The defendant made that showing in open court[22]— precisely what Mr. Archibeque seeks to avoid doing here.

¶18 Mr. Archibeque next cites *Allred v. Saunders*[23] to argue that in camera review has "been used for assessing privilege more generally." But *Allred* cannot be read to support in camera review in

---

[17] *E.E.O.C. v. Monarch Mach. Tool Co.*, 737 F.2d 1444, 1448 (6th Cir. 1980) (quoting *Wright v. Sw. Bank*, 554 F.2d 661, 663 (5th Cir. 1977)).

[18] *See* UTAH R. EVID. 506.

[19] 2010 UT App 388, ¶ 5, 246 P.3d 168.

[20] *Id.*

[21] *Id.* (second alteration in original) (citation omitted).

[22] *Id.* ¶ 6.

[23] 2014 UT 43, 342 P.3d 204.

this case. Once again, the issue in *Allred* was a discovery dispute.[24] There, we stated that a "district court may undertake in camera review when . . . it deems such a review necessary to properly evaluate whether [] documents or items *withheld from discovery* qualify for [a] privilege."[25] Nothing in this statement or the rest of our opinion in *Allred* suggests the district court may undertake an in camera review in a case like this one, where the party hoping to conceal evidence from the other parties is the same party offering it to the court.

¶19 Mr. Archibeque also finds it "ironic[]" that the State objects to his request for in camera review even though it is a process "routinely used by prosecutors." "Time and again," he points out, "the State seeks arrest warrants, search warrants, and orders to show cause based on submissions that are made available to defendants, if ever, only long after they've been signed by the judge." These examples are unhelpful to resolving the issue before us. In fact, many warrants are issued before a prosecution exists, and their very purpose is to protect the rights of the person to be arrested or searched.[26]

¶20 Finally, Mr. Archibeque points to rule 16 of the Utah Rules of Criminal Procedure, which he says "is replete with references to a court's authority to review materials in camera." But, as he acknowledges, rule 16 generally, and the provisions he highlights specifically, govern discovery.[27] Once again, the State is not requesting purportedly privileged material as part of discovery disclosures. Rule 16 simply does not apply and does not support Mr.

---

[24] *Id.* ¶ 1.

[25] *Id.* ¶ 26 (emphasis added).

[26] "An essential purpose of a warrant requirement is to protect privacy interests by assuring citizens subject to a search or seizure that such intrusions are not the random or arbitrary acts of government agents. A warrant assures the citizen that the intrusion is authorized by law, and that it is narrowly limited in its objectives and scope. A warrant also provides the detached scrutiny of a neutral magistrate, and thus ensures an objective determination whether an intrusion is justified in any given case." *Skinner v. Ry. Lab. Execs. Ass'n*, 489 U.S. 602, 621–22 (1989) (citations omitted).

[27] UTAH R. CRIM. P. 16.

Archibeque's attempt to conceal his justification for his own subpoena.

¶21 The law disfavors one-sided proceedings, and Mr. Archibeque has not convinced us that presumption does not apply here. Although he has cited ample authority permitting in camera review in the discovery context, that authority does not support the soundness of an in camera proffer in this instance. As the State puts it, Mr. Archibeque has cited "no authority recognizing that a criminal defendant can use the specter of these privileges as a sword to prevent him from having to disclose evidence and arguments that he voluntarily submits."

¶22 Mr. Archibeque must disclose the evidence he hopes to gather from A.W.'s testimony only because he chose to issue the subpoena. And because he seeks testimony from A.W. on a substantive matter—to determine whether probable cause exists—the State, as the opposing party, should have the opportunity to dispute his proffer or to argue that "the grounds to be covered by the live witness could just as effectively be presented by other means."[28]

## II. Mr. Archibeque's Rights as a Criminal Defendant Do Not Entitle Him to In Camera Review

¶23 Although one-sided proceedings are disfavored, we would be inclined to uphold the district court's ruling if we agreed it was necessary to protect Mr. Archibeque's constitutional rights as a criminal defendant. But the rights he identifies do not entitle him to the in camera review he seeks, so we hold that the district court's order was improper.

¶24 Mr. Archibeque begins by identifying several rights guaranteed to a criminal defendant by the U.S. and Utah constitutions, including the right to due process and a fair trial, the right against self-incrimination, and the right to effective assistance of counsel. And he correctly notes that these rights "protect criminal defendants in myriad ways, and trump any rule of procedure." But he fails to show how any of his rights will be violated if he is required to make his *Lopez* proffer in open court.

¶25 For example, Mr. Archibeque is correct that the right against self-incrimination includes "the right of the individual not to reveal his thoughts in the face of accusations by the state."[29] Indeed, that is

---

[28] *See State v. Lopez*, 2020 UT 61, ¶ 54 n.18, 474 P.3d 949.

[29] *Am. Fork City v. Crosgrove*, 701 P.2d 1069, 1075 (Utah 1985).

"the most fundamental right sought to be protected by the privilege against self-incrimination."[30] But the scope of that right "protects a person only against being incriminated by his own compelled testimonial communications."[31] Here, the State is not seeking testimonial communications from Mr. Archibeque. Indeed, it does not seek to compel the disclosure of anything. The only reason Mr. Archibeque must produce anything at all is because he chose to subpoena A.W.'s testimony.

¶26 Next, Mr. Archibeque asserts that "[p]remature disclosure will also taint the reliability of a witness's trial testimony, impairing the defendant's right to effective assistance of counsel, cross-examination and confrontation, and . . . the due process right to a fair trial." But he fails to explain how affording the State and A.W. a chance to respond to his *Lopez* proffer would render A.W.'s trial testimony unreliable.

¶27 Finally, Mr. Archibeque cites authority holding that a defendant "must not be forced to provide the prosecutor a preview of his case or arguments, and must not be required to provide the prosecutor advance notice of the weaknesses in the State's case or evidence."[32] And he argues that in criminal cases, the State and the defendant "are not on equal footing" when it comes to discovery and disclosure duties. Once more, this is true but irrelevant. Nobody is forcing Mr. Archibeque to disclose anything.

¶28 In addition to the rights he holds as a criminal defendant generally, Mr. Archibeque provides a thoughtful summary of the rights he enjoys at the preliminary hearing stage specifically. But that discussion suffers from the same defect that afflicts the rest of his arguments: it fails to show how those rights entitle him to the district court's order for in camera review.

---

[30] *Id.*

[31] *Doe v. United States*, 487 U.S. 201, 207 (1988) (citations omitted) (interpreting U.S. CONST. amend. V); *see also Crosgrove*, 701 P.2d at 1075 (interpreting UTAH CONST. art. I, § 12 as limited "to those situations where the state seeks evidence of a testimonial or communicative nature").

[32] The cited cases are *State v. Marshall*, 4 P.3d 1039, 1044 (Az. Ct. App. 2000) and *People v. Chavez*, 109 Cal. Rptr. 157, 161 (Ct. App. 1973).

¶29 To summarize, Mr. Archibeque has identified numerous rights that he argues would be violated were he required to make his *Lopez* proffer in open court. But those rights simply are not implicated here.[33] Mr. Archibeque knows that, under *Lopez*, overcoming the State's prima facie showing of probable cause is a "difficult" task.[34] But nobody is forcing him to attempt it; he is well within his rights to hold his cards until trial. What he cannot do is have his cake and eat it too. None of the rights Mr. Archibeque has identified protects him from the consequences of his litigation strategy. If he chooses to proceed with his *Lopez* proffer, fairness requires that the State have an opportunity to respond before A.W. is compelled to testify.

## Conclusion

¶30 In most instances, a criminal defendant is not required to reveal his strategy ahead of trial, including his plans for cross-examining adverse witnesses. Nor is he required to make as extensive disclosures as is the prosecution. But the right to keep his trial strategy under wraps is not absolute, and it does not protect him here, where his own litigation strategy requires he make a particular showing to the court. Because our adversarial system disfavors one-sided proceedings, and because Mr. Archibeque is not entitled to one here, he must make his *Lopez* proffer in open court, giving the State the opportunity to respond. Accordingly, we reverse the district court's order granting Mr. Archibeque's motion for in camera review.

---

[33] Other courts have held that criminal defendants do not enjoy a right to proceed ex parte before trial, even to protect trial strategy. *See, e.g.*, *Pare v. Commonwealth*, 648 N.E.2d 1277, 1277–78 (Mass. 1995); *State v. Apelt*, 861 P.2d 634, 650 (Ariz. 1993); *Ramdass v. Commonwealth*, 437 S.E.2d 566, 571 (Va. 1993), *vacated on other grounds sub nom.*, *Ramdass v. Virginia*, 512 U.S. 1217 (1994); *State v. Floody*, 481 N.W.2d 242, 254–56 (S.D. 1992).

[34] *See State v. Lopez*, 2020 UT 61, ¶¶ 48, 50, 474 P.3d 949.